IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERESA SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No.: 2:20-cv-01258-NIQA |
| v. | ) |
| | ) Judge Nitza Quiñones Alejandro |
| 365 HEALTH SERVICES, LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

In accordance with Fed. R. Civ. P. 56, Defendant, 365 Health Services, LLC (hereinafter,

"365 Health"), by and through its undersigned counsel, Buchanan Ingersoll & Rooney PC,

hereby submits the following Statement of Undisputed Material Facts in conjunction with its

Motion for Summary Judgment.[1]

**I.      Relevant Factual Background**

1.      365 Health is a provider of home care services, with offices based in Bala

Cynwyd, Pennsylvania, that delivers support services to clients throughout the Greater

Philadelphia area.  *See* Exhibit 1, Declaration of Lawrence Quinn ("Quinn Decl.") at ¶ 5.

2.      For adults who require care at home, 365 Health employs individuals who provide

support services to 365 Health's clientele in their private residences.  *See* Exhibit 1, Quinn Decl.

at ¶ 6.

---

[1]      The facts herein are offered purely for the purposes of summary judgment, which generally requires facts to
be viewed in a light most favorable to the non-movant.  365 Health reserves the right to make contrary
arguments and factual assertions at the time of trial.

3.      365 Health maintains policies and procedures that detail its expectations for employees.  These policies and procedures are outlined in the Employee Handbook.  Exhibit 1, Quinn Decl. at ¶ 7; *see also* Exhibit 2, 365 Health Employee Handbook, 365 Health 000001-000031.

4.      In connection with an employee's onboarding, each employee at 365 Health is provided with a copy of 365 Health's Employee Handbook.  Exhibit 1, Quinn Decl. at ¶ 8.

5.      One such policy included in the Employee Handbook is 365 Health's Pay Rate Policy.  Exhibit 1, Quinn Decl. at ¶ 9; *see also* Exhibit 2, Pay Rate Policy, 365 Health 000026.

6.      Specifically, 365 Health's Pay Rate Policy makes clear that an employee's rate of pay **may be subject to change** depending upon the specific work assignment and consumer. Exhibit 1, Quinn Decl. at ¶ 10; *see also* Exhibit 2, Pay Rate Policy, 365 Health 000026 ("*[365 Health] strives to provide our employees with the most competitive pay rates in the industry. Since [365 Health] contract[s] individually with each consumer, your pay rate may be subject to change depending upon the specific work assignment and consumer*.").

7.      Any changes to an employee's pay rate are prospective in nature and not subject to fluctuation based on the number of hours worked in any specific workweek.  Exhibit 1, Quinn Decl. at ¶ 11.

## II.     Plaintiff's Employment with 365 Health

8.      Plaintiff, Teresa Smith (hereinafter, "Ms. Smith"), began working for 365 Health as a home healthcare aide in or around May, 2018.  Exhibit 1, Quinn Decl. at ¶ 12; *see also* Exhibit 3, Transcript of Teresa Smith Deposition ("Smith Dep.") at 18:8-10.

9.      Like other 365 Health employees, Ms. Smith received an Employee Handbook at the commencement of her employment with 365 Health.  Exhibit 1, Quinn Decl. at ¶ 13; *see also* Exhibit 4, Ms. Smith's Employee Handbook Acknowledgement Form.

10.     Throughout her employment with 365 Health, Ms. Smith provided services to one client—"D.M."[2]  Exhibit 1, Quinn Decl. at ¶ 14; *see also* Exhibit 3, Smith Dep. at 15:22-16:8.

11.     365 Health scheduled Ms. Smith to provide care and support to D.M. consistent with D.M.'s eligibility.  Exhibit 1, Quinn Decl. at ¶ 16.

12.     Consistent with D.M.'s eligibility, Ms. Smith was initially scheduled to work 5 hours a day, 7 days a week, for a total of 35 hours per week.  Her hourly rate of pay at that time was $12.00.  Exhibit 1, Quinn Decl. at ¶ 17; *see also* Exhibit 3, Smith Dep. at 20:10-14; 53:10-16.

13.     However, in late Fall of 2018, D.M. became eligible to receive 12 hours of care per day or 84 hours of care per week.  Exhibit 1, Quinn Decl. at ¶ 18; *see also* Exhibit 3, Smith Dep. at 46:8-16.

14.     By way of explanation, D.M. was a participant in the Medicaid Aging Waiver Program.  As a participant, the hours of eligibility for her care were determined and authorized by an independent care coordination entity.  Exhibit 1, Quinn Decl. at ¶ 15.

15.     365 Health's Client Service Manager, Lawrence Quinn (hereinafter, "Mr. Quinn"), became aware of D.M.'s increase in hours—and Ms. Smith's desire to work all of those hours—through D.M.'s care coordination entity.  Exhibit 1, Quinn Decl. at ¶ 3; 18-19.

16.     Because D.M. was eligible to receive care for 12 hours per day (for a total of 84 hours per week), instead of 5 hours per day (for a total of 35 hours per week), 365 Health needed

---

[2]      The client will be referred to by her initials to protect her confidentiality.

to either find someone else to cover the additional 49 hours per week, or come to some

arrangement with Ms. Smith to provide the additional 49 hours needed to support and care for

D.M.  Exhibit 1, Quinn Decl. at ¶ 20.

17.     After Mr. Quinn received this information from D.M.'s care coordination entity,

Mr. Quinn contacted Ms. Smith and requested that they meet to discuss her role in D.M.'s care.

Exhibit 1, Quinn Decl. at ¶ 21; *see also* Exhibit 3, Smith Dep. at 47:20-48:13.

18.     During the week of December 9, 2018, Ms. Smith met with Mr. Quinn at 365

Health's Bala Cynwyd office.  Exhibit 1, Quinn Decl. at ¶ 22; *see also* Exhibit 3, Smith Dep. at

48:14-22.

19.     During this meeting, Ms. Smith indicated that she would like to cover the

additional 49 hours for which D.M. was authorized to receive care.  In response to this request,

Mr. Quinn informed Ms. Smith that the increase in hours would significantly modify her

schedule.  In fact, the change in D.M.'s circumstances would have Ms. Smith more than

doubling her existing hours.  Consistent with 365 Health's Pay Rate Policy, Mr. Quinn informed

Ms. Smith that her hourly rate would need to change for the modified schedule.  Exhibit 1, Quinn

Decl. at ¶ 23-24; *see also* Exhibit 3, Smith Dep. at 49:9-15.

20.     Mr. Quinn informed Ms. Smith during this meeting that the hourly pay rate

associated with her new schedule would be changed to $10.50 per hour.  Exhibit 1, Quinn Decl.

at ¶ 25; *see also* Exhibit 3, Smith Dep. at 49:9-15; 55:7-9; 59:8-10.

21.     Ms. Smith acknowledged during the meeting with Mr. Quinn that her rate would

be reduced and she accepted the $10.50 per hour rate for her revised schedule.  Exhibit 1, Quinn

Decl. at ¶ 26; *see also* Exhibit 3, Smith Dep. at 49:15-17;50:5-8;52:2-4.

22.      Consistent with the agreement reached during the meeting between Mr. Quinn and Ms. Smith, on December 16, 2018, Ms. Smith's schedule changed to 12 hours a day, 7 days a week for a total of 84 hours.  Exhibit 1, Quinn Decl. at ¶ 27; *see also* Exhibit 3, Smith Dep. at 54:3-10; *see also* Exhibit 5, Ms. Smith's Timesheets, 365 Health 000115-000185, at 365 Health 000144-000185.

23.      Consistent with the agreement reached during the meeting between Mr. Quinn and Ms. Smith, and as reflected on her pay stubs, Ms. Smith received a base rate of $10.50 per hour for all shifts worked after December 16, 2018.  This rate of pay was accurately reflected on Ms. Smith's pay stubs.  Exhibit 1, Quinn Decl. at ¶ 28; *see also* Exhibit 3, Smith Dep. at 52:10-55:1; *see also* Exhibit 6, Ms. Smith's Pay stubs, 365 Health 000186-000256, at 365 Health000215-000256.

24.      Additionally, Ms. Smith received overtime at the rate of $15.75 per hour for all shifts worked after December 16, 2018.  Exhibit 1, Quinn Decl. at ¶ 29; *see also* Exhibit 3, Smith Dep. at 55:22-56:1; *see also* Exhibit 6, Ms. Smith's Pay stubs, 365 Health 000186-000256, at 365 Health 000215-000256.

25.      Ms. Smith's hourly wage of $10.50 per hour remained unchanged from December 16, 2018, until she voluntarily resigned in early October of 2019.  Exhibit 1, Quinn Decl. at ¶ 30; *see also* Exhibit 3, Smith Dep. at 60:1-4; *see also* Exhibit 6, Ms. Smith's Pay stubs, 365 Health 000186-000256, at 365 Health 000215-000256.

**III.    Ms. Smith's Allegations**

26.      Ms. Smith testified that the first time she provided services to D.M. was in May of 2018—when she began working at 365 Health.  Exhibit 3, Smith Dep. at 17:18-18:3; 18:8-13.

27.     Ms. Smith testified that she assisted D.M. with household chores and helped D.M. with small errands.  Exhibit 3, Smith Dep. at 25:18-26:2.

28.     Ms. Smith testified that 365 Health required her to complete timesheets on a weekly basis that outlined the work she did for D.M.  Exhibit 3, Smith Dep. at 27:3-30:5.

29.     Ms. Smith testified that she worked 35 hours a week from the time she started at 365 Health, in May, 2018, until December 15, 2018.  Exhibit 3, Smith Dep. at 38:22- 39:5; 43:3-11.

30.     Ms. Smith acknowledged during her deposition that she began working 12 hours a day, 7 days a week, on December 16, 2018.  Exhibit 3, Smith Dep. at 45:3-46:5; *see also* Exhibit 6.

31.     Ms. Smith testified that D.M. suffered from "a lot of health problems," and needed a home healthcare aide more than just 5 hours a day.  Exhibit 3, Smith Dep. at 46:6-12.

32.     Ms. Smith testified that D.M. wanted Ms. Smith to work the entire 12 hour shift because D.M. "didn't want anyone [else] in her home."  Exhibit 3, Smith Dep. at 46:17-47:4.

33.     In fact, Ms. Smith testified that D.M. would have refused to accept the 12 hour assistance if Ms. Smith could not work the entire shift.  Exhibit 3, Smith Dep. at 47:1-4.

34.     Ms. Smith testified that Mr. Quinn informed her that her new hourly rate would be either $10.00 per hour or $10.50 per hour during their meeting.  Exhibit 3, Smith Dep. at 55:2-9 ("*He was like roughly, like, 'I could probably get you like 10 or 10.50.'*"); *see also id*. at 59:8-20 ("*Yeah. Like I said, we discussed it, and he was telling me that it was going to be $1.50 shorter.*").

35.     Ms. Smith admitted during her deposition that she accepted her new hourly wage of $10.50 per hour because she "need[ed] her job." Exhibit 3, Smith Dep. at 52:2-4 ("*It was just basically take it or … leave it. And I couldn't leave it because I had bills, you know.*").

36.     Ms. Smith admitted that when she received her direct deposit for the week of December 16, 2018, it reflected the $10.50 new hourly rate. Exhibit 3, Smith Dep. at 73:24-74:21.

37.     Ms. Smith testified that she received her direct deposit for the week of December 16, 2018, on December 28, 2018. Exhibit 3, Smith Dep. at 54:3-55:1; 55:18-21.

38.     Ms. Smith testified that after Mr. Quinn informed her that her pay would be $10.50 per hour, she began looking for other jobs. Exhibit 3, Smith Dep. at 50:8-11.

39.     Ms. Smith testified that she voluntarily resigned from 365 Health in October, 2019, and began working for Paragon Home Care shortly thereafter. Exhibit 3, Smith Dep. at 59:21-60:7.

Respectfully submitted,

BUCHANAN INGERSOLL & ROONEY PC

*/s/Thomas G. Collins*
Thomas G. Collins, Esquire
I.D. #75896
Kareemah Mayer, Esquire
I.D. #326031
409 North Second Street, Suite 500
Harrisburg, PA 17101
Phone: (717) 237-4800
Facsimile:  (717) 233-0852
Email: thomas.collins@bipc.com
Email: kareemah.mayer@bipc.com

*Counsel for Defendant,*
*365 Health Services, LLC*

Dated:  August 31, 2021

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and complete copy of the foregoing was transmitted to the

Court electronically for filing and for electronic service upon the following attorneys of record

on this 31st day of August, 2021:

Camille Fundora Rodriguez, Esq.
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Email: crodriguez@bm.net


Ryan Allen Hancock
Willig, Williams & Davidson
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
Email: rhancock@wwdlaw.com


By: */s/Thomas G. Collins*